## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANKIE WHITE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:24-cv-177 |
| | § | |
| EQUIFAX INFORMATION SERVICES LLC, | § | Complaint for Damages |
| EXPERIAN INFORMATION SOLUTIONS, | § | |
| Inc., TRANS UNION LLC, FLAGSTAR | § | With Jury Demand Endorsed |
| BANK, F.S.B., and PHH MORTGAGE | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## <u>COMPLAINT</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Frankie White ("Plaintiff"), by and through counsel, for her Complaint against Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union LLC, Flagstar Bank, FSB and PHH Mortgage Corporation jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.      Three of the Defendants are, consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and two, Flagstar Bank, FSB and PHH Mortgage Corporation, are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory,

and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Frankie White, is a natural person residing in Rutherford County, Tennessee and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and are victims of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning

consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.     Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.     Upon information and belief, Defendant Flagstar Bank, FSB which may also hereinafter be referred to as "Flagstar," "Flagstar Mortgage" "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Michigan Corporation, that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 5151 Corporate Drive, Troy, Michigan 48098. Flagstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.     Upon information and belief, Defendant PHH Mortgage Corporation which may also hereinafter be referred  to as "PHH," "PHH Mortgage," "Defendant," "Defendants," "Furnisher

Defendant," or "Furnisher Defendants," is a New Jersey Corporation, that does substantial business in this judicial district  and may be served by delivering a summons to its Legal Department at its headquarters, 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409 and to its Legal Department at its subsidiary's headquarters, 1 Mortgage Way, Mount Laurel, New Jersey 08054 . PHH is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

9.      Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

10. Venue is proper in this district, because Defendants transact business in this district, PHH services the loan and PHH's headquarters are located in this district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the District of New Jersey. 28 U.S.C. § 1391.

11. Venue is further proper in this District, because CRA Defendants entered into agreements with PHH in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute sent from the CRA Defendants as part of their reinvestigation was submitted to PHH's headquarters and investigated by the furnisher PHH using PHH's resources located at or closely connected to this judicial district. PHH managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

### Background Information for Plaintiff's PHH Mortgage and Flagstar Mortgage

12.    In or around April 1, 2016, the Plaintiff secured a mortgage for her home at 312 Southside Drive, Smyrna, Rutherford County, Tennessee with Pingora Loan Servicing.

13.    In or around August 14, 2017, the Plaintiff filed for Bankruptcy Protection Under Chapter 13 of Title 11.

14.    A redacted copy of Plaintiff's Chapter 13 Case Summary and Docket Report is attached hereto as Exhibit "A" and incorporated herein by reference.

15.    On or around August 23, 2017, PHH Mortgage became the new servicer for the mortgage as they acquired the loan from Pingora Loan Servicing. *See* Exhibit "A".

16.     On or around October 24, 2018, Flagstar became the new servicer as they acquired the loan from PHH Mortgage. *See* Exhibit "A."

17.     On September 29, 2022, U.S. bankruptcy Judge Charles M. Walker signed the Order discharging the Plaintiff from her Chapter 13 Bankruptcy Petition.

18.     A redacted copy of the Plaintiff's Chapter 13 Order of Discharge and Notice is attached hereto as Exhibit "B" and incorporated herein by reference.

19.     On November 7, 2022, Henry E. Hildebrand, III, the Trustee, filed and submits Chapter 13 Trustee's Final Report and Account.

20.     A redacted copy of the Plaintiff's Chapter 13 Trustee's Final Account and Report is attached hereto as Exhibit "C" and incorporated herein by reference.

21.     To this day, Plaintiff still live in the home and make timely mortgage payments.

<u>Credit Reporting</u>

22.     Sometime in August of 2023, the Plaintiff pulled her credit report and noticed that inaccurate information was reporting.

23.     A redacted copy of the Plaintiff's August 2023 credit report is attached hereto as Exhibit "D" and incorporated herein by reference.

24.     Within the Tri-Merge credit report, Plaintiff noticed that Equifax reported the tradeline for her PHH mortgage as follows: Derogatory, Wage Earner Plan, and Account involved in Chapter 13 debt adj., and Real Estate Mortgage Included in Chapter 13 despite her Bankruptcy being discharged on September 2022, and terminated on December 2022. Plaintiff also noticed that Equifax reported her Flagstar Bank Mortgage as Derogatory, Wage Earner Plan, and Account involved in Chapter 13 debt adj., and Account transferred and sold, Included in Chapter 13.

25.    Plaintiff noticed that within the Tri-Merge credit report, Experian reported the tradeline for her PHH mortgage as follows: Derogatory, Wage Earner Plan, and debt included in or discharged through Bankruptcy Chapter 13, despite being discharged on September 2022, and terminated on December 2022. Plaintiff also noticed that Flagstar tradeline is reporting Derogatory, Wage Earner Plan, Debt included in or discharged through Bankruptcy Chapter 13.

26.    Within the Tri-merge credit report, Plaintiff noticed that the Trans Union reported the tradeline for her Flagstar mortgage as follows: derogatory and Chapter 13; wage earner plan account, despite her Bankruptcy being discharged on September 2022 and terminated on December 2022.

27.    Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

<u>Credit Reporting Dispute Letters and Reinvestigation Requests</u>

28.    On or about September 27, 2023, Plaintiff disputed the reporting of the PHH mortgage account and Flagstar mortgage account with Equifax, Experian, and Trans Union ("CRA

Defendants") directly. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the PHH mortgage account and the Flagstar mortgage account.

29.    Within the dispute letter, Plaintiff described in great detail the issues and the misreporting of her Chapter 13 Discharge remarks, the inaccurate reporting after her Chapter 13 discharge and enclosed a copy of the Chapter 13 Docket Summary.

30.    Redacted copies of Plaintiff's unsigned dispute letters to Equifax, Trans Union and Experian is attached hereto as Exhibit "E" and is incorporated herein by reference.

31.    On November 28, 2023, the Plaintiff obtained an updated copy of her three-bureau credit report.

32.    A redacted copy of the November 2023 Tri-Merge report is attached hereto as Exhibit "F" and is incorporated herein by reference.

Equifax's continued reporting errors

33.    On or around October 4, 2023, Equifax responded to Plaintiff's dispute by stating that the Flagstar tradeline and PHH tradeline were both reporting as: "This Account is currently reporting included in bankruptcy. The following fields have been modified: *Additional information."

34.    A redacted copy of Equifax's response is attached hereto as Exhibit "G" and is incorporated herein by reference.

35.    Plaintiff then obtained an updated copy of her three-bureau credit report on November 28, 2023 and within the Equifax credit report, Plaintiff noticed that Equifax did not make

any of the requested changes to the Flagstar mortgage tradeline, despite being discharged from her Chapter 13 Bankruptcy. Furthermore, the Plaintiff noticed that Equifax deleted the PHH Mortgage tradeline which was not requested. *See* Exhibit "F".

36.    Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the PHH tradeline and the Flagstar tradeline and gave no explanation as to why it failed to sufficiently update the PHH tradeline and Flagstar tradelines when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

37.    Further, Equifax's response was not the result of a reasonable investigation into Plaintiff's dispute for it did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the PHH tradeline and Flagstar tradeline because Plaintiff sent a clear dispute and yet Equifax made no changes to the disputed dates despite Plaintiff being successfully discharged.

38.    Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's PHH mortgage account and Flagstar mortgage account.

39.    In accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the PHH reporting and Flagstar reporting lines.

40.    In the alternative to the allegation that Equifax failed to contact PHH and Flagstar, it is alleged that Equifax did forward some notice of the dispute to PHH and Flagstar, and PHH and Flagstar failed to conduct a lawful investigation.

Experian's reinvestigation disputes

41.    On or around October 31, 2023, Experian responded to Plaintiff by updating the information to Flagstar bank, however a closer review stated that it was still showing Petition for Chapter 13 Bankruptcy remarks, which is incorrect. Furthermore, Experian responded to the PHH inquiry by deleting the PHH mortgage tradeline, which was not requested.

42.    A redacted copy of Experian's response is attached hereto as Exhibit "H" and incorporated herein by reference.

43.    Plaintiff then obtained an updated copy of her three-bureau credit report on November 28, 2023, and within the Experian credit report, Plaintiff noticed that Experian did not make any of the requested changes to the Flagstar mortgage tradeline, despite being discharged from her Chapter 13 Bankruptcy. Furthermore, the Plaintiff noticed that Experian deleted the PHH Mortgage tradeline which was not requested. *See* Exhibit "F".

44.    Experian's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the PHH and Flagstar tradelines and gave no explanation as to why it failed to sufficiently update the Flagstar tradeline and deleted the PHH tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

45.    Experian's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the PHH and Flagstar Mortgage tradelines because Plaintiff sent a clear dispute and yet Experian made no changes to the disputed information

and even deleted a tradeline, which was not requested despite Plaintiff being successfully discharged.

46.     Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's PHH and Flagstar mortgage accounts.

47.     In accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the PHH and Flagstar mortgage reporting lines.

48.     In the alternative to the allegation that Experian failed to contact PHH and Flagstar, it is alleged that Experian did forward some notice of the dispute to PHH and Flagstar, and PHH and Flagstar failed to conduct a lawful investigation.

<u>Trans Union's continued reporting errors</u>

49.     On or around October 23, 2023, Trans Union responded to the Plaintiff by making none of the requested changes and stating in part, "We investigated the information you disputed and updated: **Pay Status** Here is how this item appears on your credit report following the investigation," with the updated status still showing chapter 13 Bankruptcy remarks.

50.     A redacted copy of Trans Union's response to Plaintiff is attached hereto as Exhibit "I" and incorporated herein by reference.

51.     Plaintiff then obtained an updated copy of her three-bureau credit report on November 28, 2023 and within the Trans Union credit report, Plaintiff noticed that Trans Union did not make any of the requested changes, despite being discharged from her Chapter 13 Bankruptcy.

*See* Exhibit "F".

52.    Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Flagstar tradeline and gave no explanation as to why it failed to sufficiently update the Flagstar tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

53.    Further, Trans Union's response was not the result of a reasonable investigation into Plaintiff's dispute for it did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Flagstar tradeline because Plaintiff's sent a clear dispute and yet Flagstar made no changes to the disputed dates despite Plaintiff having been successfully discharged.

54.    Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information and continued to publish the inaccurate information regarding Plaintiff's Flagstar mortgage account.

55.    In accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Flagstar reporting lines.

56.    In the alternative to the allegation that Trans Union failed to contact Flagstar, it is alleged that Trans Union did forward some notice of the dispute to Flagstar, and Flagstar failed to conduct a lawful investigation.

<u>Dispute letters sent to Furnishers</u>

57.    On or September 27, 2023, the Plaintiff sent copies of the dispute letters to furnishers

PHH mortgage and Flagstar Mortgage.

58.    Redacted unsigned copies of the Plaintiff's letter to the furnishers is attached hereto as Exhibit "J" and is incorporated herein by reference.

59.    Upon information and belief, PHH never responded to Plaintiff's letter.

60.    On or around September 29, 2023, Flagstar responded to the Plaintiff by stating that the information is correct.

61.    A redacted copy of the Flagstar's response is attached hereto as Exhibit "K" and is incorporated herein by reference.

### V.    GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

62. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

63.  Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

64.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

65.    Equifax knew or should have known Plaintiff's Bankruptcy history and discharge were inaccurate, but Equifax continued to prepare a patently false consumer report concerning Plaintiff.

66.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting

Plaintiff, and ultimately Plaintiff's creditworthiness.

67.    After Equifax knew or should have known Plaintiff's Bankruptcy history and discharge for her mortgage tradelines were inaccurate, it failed to make the corrections.

68.    As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

69.    Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

70.    The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

71.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

72.    Equifax violated 1681i by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

73.    As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of

credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

74.    Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

75.    The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT I – EXPERIAN'S VIOLATION OF THE FCRA
### (15 .S.C. § 1681e(b))

76. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

77.    Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

78.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

79.    Experian knew or should have known of Plaintiff's Chapter 13 Bankruptcy Status and, yet Experian continued to prepare a patently false consumer report concerning Plaintiff.

80.    Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby

misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

81.    After Experian knew or should have known Plaintiff's Chapter 13 Bankruptcy Status were inaccurate for her mortgage tradelines, it failed to make the corrections.

82.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in their attempt to refinance, loss in their ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

83.    Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

84.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

85.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

86.    Experian violated 168li on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

87.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered

damages, including, but not limited to, denial in their attempt to refinance, loss in their ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

88.    Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

89.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

90.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

91.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

92.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

93.    Trans Union knew or should have known of Plaintiff's account status and payment

history, but Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

94.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

95.     After Trans Union knew or should have known Plaintiff's Chapter 13 Bankruptcy discharge and history were inaccurate, it failed to make the corrections.

96.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

97.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

98.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

99.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

100.     Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information

to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

101.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

102.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

103.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VI – PHH'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

104.    Defendant PHH violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

105.    PHH further violated 15 U.S.C. § 1681s-2(b) by continuing to report the PHH representation within Plaintiff's credit file with the CRA Defendants without also including a

notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the PHH representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the PHH representations to the consumer reporting agencies.

106.    As a result of PHH's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in her ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

107.     PHH's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

### COUNT VII – FLAGSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

108.    Defendant Flagstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

109.    Flagstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Flagstar representation within Plaintiff's credit file with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute

of the Flagstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Flagstar representations to the consumer reporting agencies.

110.    As a result of Flagstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in her ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

111.    Flagstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.    VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

112.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

113.    Plaintiff respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including

New Jersey.

114.    Plaintiff respectfully request that this Honorable Court award Plaintiff her litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

115.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

116.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reporting about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

117.    Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

118.    Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

119.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, denial in her attempt to refinance her mortgage, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

## VIII. PRAYER FOR RELIEF

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs, Frankie White pray that this Honorable

Court:

A.      Enter Judgment in favor of Plaintiff and against Defendants Equifax Information

Services LLC, Experian Information Solutions, Inc., Trans Union LLC, Flagstar Bank, FSB,and PHH

Mortgage Services jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff,

including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit

denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience,

lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and

fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable

state law, and common law;

B.      Find that the appropriate circumstances exist for an award of punitive damages to

Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.      Order that the CRA Defendants, Equifax Information Services LLC, Experian

Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendants, Flagstar Bank, FSB,

PHH Mortgage Services work in conjunction, cooperatively, and/or individually to reinvestigate and

correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit

histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show they

are justly entitled.

Date Filed: <u>January 11, 2024</u>

Respectfully submitted,


<u>*s/ Matthew P. Forsberg*</u>
Matthew P. Forsberg
NJ State Bar Number 360702021
Gloria C. Lam
NJ State Bar Number 286962018
FCRA-NJ@fieldslaw.com
**FIELDS LAW FIRM**
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1110 (telephone)
(612) 370-4256 (fax)


COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


January 11, 2024                          *s/ Matthew P. Forsberg*
Date                                       Matthew P. Forsberg